UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA ELIAS,

       Plaintiff,

                                       Case No. 24-cv-12251

v.                                   Honorable Linda V. Parker

EDGE PHARMA, LLC, and
WILLIAM CHATOFF,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT WILLIAM
CHATOFF'S MOTION TO DISMISS (ECF NO. 33) AND DENYING
PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT (ECF NO. 35)**

Plaintiff brings this negligence and products liability lawsuit to recover injuries she sustained to her arm and shoulder allegedly from a tainted serum manufactured by Defendant Edge Pharma, LLC.  Plaintiff received the prescribed allergy injections from mid-September 2021 until January 20, 2022.  To show that the serum was tainted, Plaintiff points to an FDA investigation into the sterility of Edge Pharma's manufacturing process.  Following this investigation, the FDA issued a permanent injunction against Edge Pharma, ordering it to cease its drug manufacturing operations.  Edge Pharma voluntarily recalled all of its drug products on December 4, 2021.

1

Plaintiff brings claims against Edge Pharma and Defendant William Chatoff in his individual capacity (collectively "Defendants").  Chatoff is the owner, manager, CEO, and remaining representative of Edge Pharma.  (*Id.* at PageID.4 ¶ 4.)  In her First Amended Complaint, Plaintiff alleges the following claims against Defendants: (I) negligent manufacture; (II) breach of implied and express warranties; and (III) negligent manufacture for a failure to warn.  (ECF No. 4.)  In her proposed Second Amended Complaint, Plaintiff adds two counts[1] against Chatoff in his individual capacity for general negligence and negligent misrepresentation relating to the production of the serum she was injected with.  (*See generally* ECF No. 35-2.)  Plaintiff requests damages related to her injuries, including health and medical costs, pain and suffering, restitution, as well as attorneys' fees and costs.  (*Id.* at PageID.40.)

Chatoff has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 33.)  The motion is fully briefed.  (ECF Nos. 34, 38.)  About a month after Chatoff filed his motion, Plaintiff filed a Motion for Leave to File Second Amended Complaint (ECF No. 35), to which Chatoff objected within his reply brief in support of his motion to dismiss.  (ECF No. 38.)

---

[1] Plaintiff's proposed Second Amended Complaint contains two "Count IV" entries.  For purposes of this order, Count IV refers to Plaintiff's general negligence claim against Chatoff and Count V refers to Plaintiff's negligent misrepresentation claim against Chatoff.

Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

For the reasons set forth below, the Court is granting Chatoff's motion to dismiss and denying Plaintiff's request to amend her Complaint.

## I.      Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *See Iqbal*, 556 U.S. at 668. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

When deciding motions to amend, Federal Rule of Civil Procedure 15(a) instructs the courts to "freely grant" leave to amend "where justice so requires."

This is because, as the Supreme Court has advised, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, a motion to amend a complaint should be denied if the amendment would be futile. *See Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999).  An amendment is futile when it fails to state a claim upon which relief can be granted and is therefore subject to dismissal pursuant to Rule 12(b)(6).  *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.") (citation omitted).

## II.    Factual and Procedural Background

On July 27, 2021, Khaled Shukairy, M.D., Plaintiff's physician at Genesee ENT Associates PC, prescribed her allergy injections.  (ECF No. 4 at PageID.34 ¶ 11; *see also* ECF No. 4-2 at PageID.44.)  Plaintiff received her first dosage of the injection in mid-September 2021.  (ECF No. 4 at PageID.34 ¶ 13.)  These doses contained serum synthesized by Edge Pharma.  (*Id.* at ¶ 12.)

Plaintiff's medical records reflect that Dr. Kazem Hak saw her on September 30, 2021, regarding her reported feelings of nausea.  (*Id.* at ¶ 14.)  Plaintiff continued receiving injections through January 20, 2022.  (*Id.* at ¶ 18.)  Plaintiff returned to Dr. Hak on February 10, 2022, complaining of discoloration and

worsening pain in her left shoulder, upper arm, and forearm.  (*Id.* at ¶ 19.)  Plaintiff

told Dr. Hak that her allergist had phoned her to report that the allergy serum she

was using had been recalled.  (*Id.*; *see* also ECF No. 4-4 at PageID.53.)  Dr. Hak

informed Plaintiff that an MRI would be needed.  (*Id.* at PageID.35 ¶ 20.)  The

MRI indicated that Plaintiff sustained a proximal humerus fracture and several

other injuries in the affected area.  (*Id.* at ¶ 21.)  At a follow-up visit, Dr. Hak noted

that Plaintiff's range of motion was severely limited due to pain in her upper

extremity joints and left shoulder.  (*Id.* at ¶ 22.)

In the interim, on December 4, 2021, Edge Pharma had announced a

nationwide recall of "all lots of all drugs" due to a "lack of sterility assurance for

products intended to be sterile."  (*Id.* at ¶ 16.)  Three days later, on December 7,

2021, the FDA published an announcement of Edge Pharma's voluntary recall of

its drug products.  (ECF No. 36-3, at PageID.324 Ex. C.)  FDA inspectors found

mold, insufficient ventilation, "blackish grime" on the floors, "white crusty

residue" on an air duct, "black mold like substances" on walls, and a "greenish

fuzzy material" on the side of a refrigerator in areas intended to be sterile.  (ECF

No. 4 at PageID.36 ¶ 30.)  Between April 2021 and September 2021,

approximately 17.5% of drug lots failed sterility testing based on the presence of

particles that could indicate microbial contamination.  (*Id.* at ¶ 31.)  Edge Pharma's

Quality Unit nevertheless approved the drugs for distribution.  (*Id.*)  The Quality

Unit invalidated endotoxin data and distributed twelve lots of drugs intended to be sterile and used these lots to fill approximately 333 orders from healthcare professionals for patient treatment.  (*Id.* at ¶ 32-33.)  Defendants did not provide assurance that these drug product lots met specifications regarding endotoxins.  (*Id.* at ¶ 33.)

### III.   Applicable Law & Analysis

#### A.   Defendant's Motion to Dismiss and Plaintiff's Response

Chatoff seeks dismissal of the claims against him, asserting that Plaintiff has failed to state a claim against him.  (*See generally* ECF No. 33.)  Specifically, Chatoff argues that Plaintiff has failed to establish grounds for piercing Edge Pharma's corporate veil to hold him personally liable, and that Plaintiff offers no allegations that Chatoff is a manufacturer or seller subject to product liability under Michigan law.  (*Id.* at PageID.169.)

#### i.   Legal Standard for Corporate Veil Analysis

Chatoff correctly identifies that a plaintiff seeking to pierce the corporate veil must satisfy a three-part test.  "Under Michigan law, there is a presumption that the corporate form will be respected."  *Servo Kinetics, Inc. v. Tokyo Precision Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007) (collecting cases).  "This presumption, often called the 'corporate veil,' may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is]

6

contrary to some overriding public policy.'" *Seasword v. Hilti*, 537 N.W.2d 221 (Mich. 1995) (citing *Wells v. Firestone*, 364 N.W.2d 670 (Mich. 1984)). "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Foodland Distribs. v. Al-Naimi*, 559 N.W.2d 379 (Mich. Ct. App. 1996) (citations omitted). "The propriety of piercing the corporate veil is highly dependent on the equities of the situation, and the inquiry tends to be intensively fact-driven." *Servo Kinetics*, 475 F.3d at 798-99 (citations omitted).

In evaluating whether to pierce the corporate veil, "courts frequently consider more specific factors such as the 'undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham.'" *Int'l Union, UAW. v. Aguirre*, 410 F.3d 297, 302-03 (6th Cir. 2005) (quoting *Laborers' Pension Tr. Fund v. Sidney Weinberger Homes*, 872 F.2d 702, 704-05 (6th Cir. 1988)).

### ii. Application of Corporate Veil Test – Element One: Edge Pharma Was Not an Instrumentality of Chatoff

Plaintiff alleges that Chatoff was the founder of Edge Pharma (ECF No. 35-2 at PageID.284 ¶ 25), the signer on business registration and other filings (*id.* at

7

PageID.285 ¶ 28), and the point of contact with the FDA regarding its investigations into Edge Pharma (*id.* at PageID.286 ¶ 34). As discussed below, Plaintiff also contends that Chatoff potentially commingled personal and corporate funds. However, such facts are insufficient to establish even the first element of this test in this case.

Plaintiff's allegations in her First Amended Complaint and her proposed Second Amended Complaint speak only to Chatoff's role within Edge Pharma rather than actions or statements that suggest the company was an instrumentality of Chatoff's will or that it was a sham. (*See generally* ECF Nos. 4, 35-2.) For example, as Chatoff puts it in his motion to dismiss, "it is unsurprising that the FDA would be in close contact with the majority shareholder and CEO of a pharmaceutical company or that such a person would be the FDA's primary contact with the company." (ECF No. 38 at PageID.544.)

In Chatoff's reply brief in support of his motion to dismiss (ECF No. 38), he correctly asserts that "[i]t is well-settled that Michigan courts will respect the separate existence of business entities from their owners." *Alpha Inv., LLC. v. Alpha Real Est., LLC.*, No. 291939, 2010 WL 4977902, at *3 (Mich. Ct. App. Dec. 7, 2010) (citing *Wells v. Firestone*, 364 N.W.2d 670 (Mich. 1984)). "This is true even when a single shareholder or member owns the entity." *Id.* (citing *Raymal v. Baergen*, 686 N.W.2d 241 (Mich. Ct. App. 2004)). Beyond her allegations that

Chatoff was the founder, CEO, and signer on business documents, Plaintiff's First Amended Complaint and proposed Second Amended Complaint do not give this Court a reason to find that Edge Pharma was a mere instrumentality of Chatoff. *But cf. Thomas v. Khrawesh*, 272 F. Supp. 3d 995, 1001-02 (E.D. Mich. 2017) (holding the "sole incorporator" of a business personally liable where he owned 100% of the stock, was the only officer, and comingled personal and corporate funds); *Gentilozzi*, 231 F. Supp. 3d at 277 (piercing the corporate veil where the sole shareholder exercised "full authority over all decisions," was "the most significant source of [the company's] funding," and extensively comingled personal and corporate funds, *inter alia*); *LePine v. Rosenbaum*, No. 19-cv-12577, 2020 WL 2836275, at *13 (E.D. Mich. June 1, 2020) (holding officers personally liable where some checks to plaintiff were made from the officers' personal bank accounts and the officers paid for personal expenses from corporate bank accounts, *inter alia*).

In deciding whether to pierce the corporate veil, "Michigan courts have also considered the commingling of funds and the extent to which the shareholder controlled the decisions of the entity." *Ryan Racing, LLC v. Gentilozzi*, 231 F. Supp. 3d 269, 277 (W.D. Mich. 2017) (citing *Foodland Distribs.*, 559 N.W.2d at 381). In her current and proposed pleadings, Plaintiff contends that Chatoff "potentially co-mingl[ed] personal funds with corporate funds." (ECF No. 4 at

9

PageID.37 ¶ 35.)  Without any additional facts to support this statement, Plaintiff's allegation regarding the possibility of commingled personal and corporate funds does not provide a basis to pierce the corporate veil.  Speculating that something is "potentially" true does not make it plausibly true pursuant to the requirements of Federal Rule of Civil Procedure 8.  *Twombly*, 550 U.S. at 454 ("Factual allegations must be enough to raise a right to relief *above the speculative level* on the assumption that all of the complaint's allegations are true.") (emphasis added).

As discussed above, Plaintiff's allegations in her First Amended Complaint and those proposed in her Second Amended Complaint are insufficient to establish that Edge Pharma was a mere instrumentality of Chatoff or that he commingled personal and corporate funds in such a way that would justify recognizing Chatoff and Edge Pharma as distinct defendants for the purposes of Plaintiff's claims.

     iii.    **Application of Corporate Veil Test – Element Two: Chatoff Did Not Use Edge Pharma's Corporate Form to Commit a Fraud or Wrong**

Decisions applying this second element indicate that piercing the corporate veil is appropriate where an individual or entity misuses the *corporate form* to commit a fraud or wrong.  *See e.g.*, *EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 500 (6th Cir. 2021) (piercing the corporate veil where an entity wholly owned and exercised control over another entity and directed it to breach a

10

contract).  In such cases, the controlling individual or entity acted through the corporation it controlled to cause a fraud or wrong.  *Id.*

While Plaintiff alleges that Chatoff was a founder, officer, and majority shareholder of Edge Pharma, she fails to allege sufficient facts to establish that Chatoff used Edge Pharma's corporate form to commit a fraud or wrong.  Instead, Plaintiff's own filings allege that Edge Pharma's Quality Unit, not Chatoff, invalidated endotoxin data and that Edge Pharma made no assurances that its products met endotoxin specifications.  (ECF No. 4 at PageID.37 ¶ 33.)  It is not clear from Plaintiff's First Amended Complaint or proposed Second Amended Complaint that Chatoff, in his individual capacity, manipulated Edge Pharma at his own will to cause a fraud or wrong.

### iv.    Plaintiff Has Failed to Plead Sufficient Factual Allegations to Pierce the Corporate Veil

In sum, Plaintiff fails to plead sufficient factual allegations to establish the elements required to pierce Edge Pharma's corporate veil to hold Chatoff personally liable for the claims alleged in her current and proposed pleadings. Plaintiff has not established that Edge Pharma was a mere instrumentality of Chatoff.  Instead, Plaintiff only describes Chatoff's managerial role over the company.  For similar reasons, Plaintiff fails to establish that Chatoff, in his individual capacity, abused Edge Pharma's corporate form to commit a fraud or wrong.  While Plaintiff pleads facts alleging an unjust loss, she must satisfy all

11

three elements to pierce Edge Pharma's corporate veil to sue Chatoff in his individual capacity.  *See Foodland Distribs.*, 559 N.W.2d at 381 (citation omitted). Because the factual allegations in the First Amended Complaint fail to do so and those proposed in her Second Amended Complaint "merely provide greater detail about Plaintiff's already-insufficient allegations without adding materially new substance" (ECF No. 38 at PageID.547), the Court concludes that Plaintiff's current claims are subject to dismissal and her proposed amendment is futile.

## VI.    Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant Chatoff's Motion to Dismiss (ECF No. 33) and is dismissing Plaintiff's claims against him. Chatoff is terminated as a party to this action.  The Court also **DENIES** Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 35).

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: July 20, 2026

12